Our next case is American Relocation Connection v. United States, 19-1245. The case is American Relocation Connection v. United States, 19-1245. May it please the Court, Andrew Grossman for the Appellant, ARC. The facts of this case demonstrate why agencies are required to consult the Small Business Administration when conducting market research into small business capabilities. Customs and Border Protection ended a small business set-aside because it believed that there were fewer than two potential small business competitors. Now if Customs had consulted the SBA's small business experts, they could have almost instantly determined that there were more small businesses that could compete for the contract. Because they would have seen, among other things, that several small businesses listed under the old contracts NAICS code satisfied. I believe that this phase of the case that you're talking about is very important, but let's move to another phase first, and that's how are you prejudiced? Is there actual prejudice here? At the end of the day, was your client qualified to receive these solicitations or the awards? Yes, Your Honor. As the record reflects, ARC did in fact satisfy the size standards for the new NAICS code. It was not originally listed under that NAICS code due to an administrative error, but once the new NAICS code was announced, ARC was able to confirm that it was subject to that NAICS code, and I think that gets to an important point. But the problem is not that you weren't qualified if it had been a set-aside, but even with your qualification, there weren't enough to justify a small business set-aside under the NAICS code ultimately chosen. Is that correct? Two points, Your Honor. First is I don't think that is correct, because the agency ended the set-aside on the basis that there would not be at least two, and if you were to include ARC, there would in fact be two. So that's the factual point. But I think that's also the wrong question to ask, and I think that the... But you didn't qualify until after the fact. ARC was qualified under the size standards. The simple checkbox was not checked in the government's database. So ARC did satisfy the size standards. But I think that gets to an important point, which is that this consultation requirement with SBA, the whole point is that agencies frequently do not undertake serious market research to determine small business capabilities, and the SBA can do things like identifying potential small businesses like ARC that would satisfy the size standards. And it would make sense that the Small Business Administration, which has access to ARC size information, could have determined almost instantly through a search of the government's SAM database that ARC, again, the existing incumbent small business contractor, would have been qualified under the NAICS code that the agency had selected. So that's the reason why the SBA required in its regulation that government agencies, when they're undertaking this type of market research... That ultimately, the agency chose a particular NAICS code. You didn't challenge it within a proper time period, so we're stuck with that NAICS code. And based upon that NAICS code, their determination was there's not enough competition. That was all sent to the SBA. They ratified it all. And so how can you show prejudice? Your prejudice seems to me to be this speculative argument that if they had consulted in the different NAICS code, all that kind of stuff. But I don't see how that meets the standard for concrete, actual prejudice based on the facts here. So, Your Honor, I think the place to look is in the Supreme Court's decision in Lujan. Because when the Court is talking about prejudice, what it's talking about is Article 3 standing. That's what the prejudice requirement is. And Lujan discusses at some length an earlier decision by the Supreme Court called Robertson, which involved a challenge to an agency's failure to undertake... I mean, don't we have more relevant cases of our own on prejudice in the bid protest context? I don't think in exactly this circumstance. But if I could, let me tell you why. Robertson involved a procedural requirement to undertake an environmental assessment. The agency didn't do it. The Supreme Court made clear that there is standing, irrespective of whether or not the plaintiff could show in that instance that the environmental assessment would have changed the agency's underlying decision. In other words, the plaintiff didn't have to show that to demonstrate injury. I don't think we've ever applied Lujan in this context. And that seems to me a much looser standard than we have applied and that we've ordered the Court of Federal Claims to apply, which is not that there's just some potential change in the agency's judgment in your favor, but it would actually, with some degree of certainty, given you a chance to get the result. And I just don't see how that's possible here. Well, Your Honor, a couple points. First of all, I think there is a distinction between agencies' procedural violations versus substantive violations. And most of the Court's decisions speak to substantive violations. In other words, where agencies made a mistake in their reasoning or something of that sort. And that's a different analysis Lujan makes clear. Second, this Court's decisions involving prejudice regularly cite Lujan. I can recall something like about half a dozen of them that rely on Lujan to flesh out the prejudice requirement. So we think the standard that's described in Lujan is, in fact, the right standard. And it's the standard, you know, it's the case, it's the seminal case that this Court has come back to again and again in fleshing out the prejudice requirement. And Lujan makes clear that it's not our burden to show that there would have been some other competitors or something like that. What our burden is to show is that there was a procedural requirement, that ARC was in the zone of interest protected by that procedural requirement, which as a small business it is, and that the decision simply might have been different. We don't have to prove that it would have been different. We just have to prove that there's some possibility. That's what Lujan says. In other words, the plaintiff in Lujan did not have to demonstrate that the dam wouldn't have been built if the agency had undertaken the environmental assessment. What about the fact that an SBA representative was consulted in the end, and as a result of that it was determined that he didn't qualify under the NACE code? So, Your Honor, there was a consultation that occurred. And not that he didn't qualify, but that CBP was proceeding properly. Sure, Your Honor. So that consultation came at a later stage in the procurement. So if you back up a little bit, there's the market research stage where the agency, the procuring agency assesses. I understand that, and I think that's odd. You know, that seems to me to be somewhat irregular, but I don't know that had SBA been consulted prior to the process that anything would have been any different. Well, I think there's a reason to believe that something would have been different, because the regulation specifically applies. This is, provides rather, this is in Section 125B, that the SBA will, has a responsibility to attempt to identify small business capabilities for particular requirements. That's what the SBA says it's going to do at the market research stage. And we're suggesting here that if the SBA had done that, that might have made a difference here. If they had done that under this code, would that have changed anything? Yes. That is the point, Your Honor, is that the SBA does undertake that type of inquiry. That's what SBA personnel do on a daily basis. They supplement agency's market research by looking through government databases to try and determine if there are additional potential competitors that the procuring agency might not have identified, such that the agency should then consider whether to institute a set-aside for the contract. That is the bread and butter of how the SBA intervenes in acquisitions at the market research stage, and it does that across the board. I'm still confused, because this is a bid protest, so we're reviewing this on the administrative record. And the administrative record shows that the SBA ultimately agreed with the actions taken by the agency, even despite what may have been a failure, here to do something earlier. And why, under the APA's rules of prejudicial error, is that not harmless error? So, as a matter of... Now, you want to argue this withstanding, but it seems to me the much more likely way to look at this is the APA rule of prejudicial error. And if the agency responsible for dealing with small businesses has ratified the contracting agency's actions here, I don't see how you can demonstrate prejudicial error. I think it's actually quite straightforward, Your Honor. There are two separate consultation requirements. One applies at the market research stage, and that's when the SBA reviews market research. Look, I get the facts here. But the problem, it seems to me you're arguing that that initial error could never have been cured. It could have been cured by the agency consulting with SBA regarding its market research. I would, if I could... No, but that's not a cure. That's just doing it. So, there's a rule for prejudicial error which allows an error to have occurred to not have been fixed, but otherwise be overcome by other events. That's the rule of prejudicial error. If there's an error out there, if other things in the case make it non-prejudicial, then it doesn't matter. You seem to be arguing that this is a rule that is automatically prejudicial if it's violated, and I don't see any support in the regulations for that. Well, Your Honor, I think the thing to look at is that if Your Honor is concerned about the consultation that was made with the SBA at a later stage, look at that consultation. That's at appendix page 78. What that is is a checkbox form, and it reports the conclusions of the agency's market research. It does not report the market research itself. And it says, given those conclusions, does the SBA sign off on the proposed acquisition plan? That's right at appendix 78. That's the checkbox form. So, I don't think that's something that somehow ratifies what the agency did because there was no consideration of the agency's market research as the regulation requires. That is a separate, standalone requirement. I can imagine... But the SBA is ratifying the agency's choice, even though it may have erred in the earlier stages. Again, it still sounds to me like you're saying that the SBA specifically had to approve of the market research, or say that you contacted us and we did this okay to make it non-prejudicial, and that just isn't the standard in the APA, is it? Yes, Your Honor, I believe it is. When you have a procedural requirement that applies to an agency... You're saying in the APA, procedural errors are by default prejudicial. They are prejudicial if a party is within the zone of interest that is protected by that procedural... Can you cite me a case that says all procedural errors, no matter how minor, are... And I know you don't think this is minor, but all procedural... It's the logic of your argument. All procedural errors are per se prejudicial in an APA context. Your Honor, with due respect, I'm an administrative law attorney. Those are the cases I argue. I am not aware of this prejudicial error rule. This is typically discussed as a matter of standing and understanding where... APA requires you to take account of prejudicial error in reviewing an agency decision. Yes. You're not aware of those cases? The cases typically apply the standing analysis in cases such as Lujan. Lujan itself was an APA... Actually, it was a Clean Air Act, I believe, challenge, but applying the same standard as under the APA. So I think that is the proper body of law to consult. I don't think there is some other body of law that addresses prejudice in this area. You mean like 5 U.S.C. 706, which is part of the APA, that says due account shall be taken of prejudicial error? Yes, Your Honor. That is in the APA, but I don't think that it gives rise to any type of additional requirements above and beyond Article III standing requirements. If the Court has no further questions at this time, I'll reserve the balance of my time. Thank you. Good morning, Your Honor. May it please the Court. I would like to address what ARC's counsel just previously addressed at the podium, which is the consultation with SBA. Well, we do not believe that as a procedural matter there was a violation here because this was an order placed against a federal supply schedule. Simply suggesting that the consultation with SBA was merely a procedural formality that could have resulted in prejudice... Do we have to reach that issue if we determine there's no prejudice? No. And there was no prejudice. And in addition to the small business review form that SBA concurred with and filled out as part of the record, there was also an email exchange with the SBA representative at Appendix 165. So where were you headed with the argument? Were you saying that you agree that the CBP erred as a matter of law and not consulting with the SBA when they were formatting these marketing strategies? No, we disagree with that. There has been no procedural violation here because this is an order placed against a federal supply schedule, and as such, such orders are exempted from the small business and the preference program. Is that consistent with Kingdom Law, the Supreme Court decision in Kingdom Law? Yes, it is. The Supreme Court was interpreting an entirely different statute that was specific to the VA. But it ordered specific briefing on the issue of whether orders under the FSS were deemed contracts. And the answer that the Supreme Court arrived at is yes, they are. They are, and we don't dispute that. But that's because the statutory language... That's what we have here, right? Yes. An order under the... Why is that not a contract? It is a contract. It's a contract, and under the regulations, wasn't CBP required to consult with the SBA when the initial marketing or the acquisition strategies were being mapped out? Not for this order, no. This is when the agency was setting the federal supply schedule that then resulted in these series of orders. It was required to engage in the market research and the acquisition planning that AHRQ is... And at that point, wasn't consultation also required? Yes, and that happened as far as we knew. That happened years ago. AHRQ is the incumbent under this contract. It was given the order, the current order under the contract. So the initial consultation you're saying suffices for this particular order? It does, because the FAR is very clear on this, and it speaks to these orders. But under that initial consultation, wasn't the result that there were set-asides available? No, I think we're confusing two points in time here. So the initial consultation, I believe that Your Honor is referring to, is back in June, perhaps, of 2017, when they were going to recompete this order that AHRQ already had the contract for. That's an order that has been issued and was being recompeted under the Federal Supply Schedule. The Federal Supply Schedule was set years ago, several years ago. So you're saying that the SBA requirement only applies to the Federal Supply Schedule, not the specific orders under it? Correct, correct. And FAR Part 38 makes that clear. Is that inconsistent with SBA's regulations? No. The SBA's regulations, when read as a whole, are not inconsistent on that point at all, and here's why. 125.2 has a series of... Can you start with 125.1? Sure, those are definitions. Right, which says contract has the same definition as set forth in the FAR and includes orders issued against multiple award contracts. That's true. Explain to me why an order under the FSS isn't an order against a multiple award contract. It is an order against a multiple award contract, and there is a specific... So in the definitional section, at least, contract includes what we're talking about here today. Absolutely. Okay. And there's a specific provision in the regulation, SBA regulation, that AHRQ is citing to for its argument here that addresses that. And then 125.2a, the next relevant one, said these regulations, presumably the following regulations, apply to all types of Federal Government contracts, including multiple award contracts. So are you going to tell me there's an exception, a specific exception in, is it C we're talking about, that makes the consultation non-applicable to Federal Supply Schedule orders but not contracts? No. I'm saying there is a specific provision at E, 125.2E. Sure. That just means that the contracting officer can decide not to do a set-aside, or can, but it doesn't get rid of the consultation in the first place, does it? It does. And the reason is because that language at E6 parrots the language from the promulgating statute, Section 1331 of the Small Business Jobs Act, which gave the agencies that were promulgating the FAR and SBA regs authority only to grant procuring agencies discretion, notwithstanding the prior interpretations of the FAR and regs, to nonetheless set-aside orders against a Federal Supply Schedule. It did not impose any additional requirements and it didn't give the agencies authority to mandate anything. The FAR was amended to... Wait, so you're saying that the SBA's regulations, at least to the extent they suggest that consultation is required for authorities exceed the authority of the agency under the statute? Well, I don't think the regulations suggest that. That's how AHRQ is reading it. But if that's how AHRQ reads it, that would be inconsistent with the promulgating statute. And the reason is because 125.2C... Let me ask that again because I don't think my question was clear enough. It seems to me you're arguing that the statute governing the SBA and all this kind of stuff gives discretion to the agencies to set aside things. And so because of that, there's no consultation requirement on these orders. Is that what you're saying? Correct. There's no requirements, period. Right. But the SBA, under its regulatory authority, has gone further and at least has arguably imposed that requirement. If we read them that way... I know you don't want to read them that way, but let's just assume we read C2 as imposing that requirement on specific orders against the SS. Can they permissibly do that? No. Really? Well, we're not arguing... I mean, where in the statute does it forbid them from doing this? It seems to me that that's a permissible agency interpretation of the statute. Well, the statute is clear on its face in that it grants discretion. So going beyond that and allowing or promulgating mandates would exceed that scope. And it's also inconsistent with the FAR. And the FAR was amended concurrently with SBA regs to address this statute. And the FAR, which had always included carve-outs for orders placed against federal supply schedules... Sure. I mean, I think I understand. I mean, the government has long argued that these orders from the FSS are not really contracts. But, I mean, you've been consistently losing most of those positions. And I think the President of the Court has been generally to treat orders in the same way as contracts for almost all purposes. And I just don't understand why we would do that differently here. We're not asking that orders be treated differently as contracts. But there are specific provisions in at least three parts of the FAR and in the SBA reg itself that treats orders issued against federal supply schedules differently. What AHRQ is arguing here are more general components of this regulation, which don't need to apply here because they don't apply at this order stage. So the market research requirement, C2, which requires consultation with SBA, applies at the master award level. So when this federal supply schedule was set, that consultation was required. If that's the case, then why at the master level the requirement to consult didn't... or the finding of that consultation that they originally did apply to this contract? Because it was bid openly. So it wasn't set aside, the whole schedule wasn't set aside. But there was a set aside. But there was a set aside. Well, why didn't that apply in this case? So under the current contract, the incumbent, it was set aside because the agency exercises discretion to do so. The agency also has contracting goals to set aside. You seem to equate the discretion to make a set aside with the requirement to consult. And it seems to me that there's a very clear line of difference between the two. Well, there isn't a clear line. The FAR treats all the SBA requirements and the implementations of the contract... Is that your argument, that they're the same thing? They are wrapped up into the same package because all the SBA requirements are addressed under Part 19 of the FAR. And it's clear that none of those apply to orders placed under the federal supply schedule except by agency discretion. And those requirements apply at the master contract level only. Explain to me why your argument that this is an order and that the rule of two doesn't apply here. And how is that consistent with Kingdomware, the Supreme Court decision in Kingdomware? A totally different statute, Your Honor. So the statute that the Supreme Court was interpreting in Kingdomware applied to the VA specifically and included language of mandate. So the language was that the VA shall set aside... The Supreme Court considered on a separate basis whether an order under the FSS is a contract. Correct, because... Under the FAR. That's correct, because in that case, the party had argued that because they were talking about an order, it couldn't possibly be considered a contract under the statutory language. Well, we're not going to decide the case in Kingdomware, the rule of two, until we first decide whether an order under the FSS is a contract. And the answer to that was yes. And you seem to be arguing no, that it's not. Because the... Is your argument that in Kingdomware, the mandate is for everything in the VA? It is for... There's no discretion. There's no discretion. Whenever VA goes out for contracting, it has to consider set-asides for veterans first. Yes. And in this case, your argument is based upon not so much the discretion of the order versus contract thing, or the difference, but the fact that these aren't mandatory, and the discretion goes to the agency to whether to do something to set aside. So therefore, the burden to consult is not automatic for everything. It's only when there's a contract or the agency determines to do it as a contract. That's correct. It's when the agency exercises its discretion to do something. I get that argument, but it's still an awful hard one to make under the way the SBA has promulgated their regulations, unless we declare the regulations inconsistent with the statute. Well, the regulations, as AHRQ has read them, would also be inconsistent with three parts of the Federal Acquisition Regulations. Because those were also amended after the statute was promulgated. You're almost out of your time. Can I just ask you to respond to the prejudice questions? Because, frankly, I'm thoroughly confused, after your friend's argument, about how prejudice works in the bid protest situation. Well, prejudice goes to the merits. We don't dispute standing, but we don't believe that AHRQ could be prejudiced here, because there was a consultation with SBA after the solicitation went out, but before offers were due, SBA concurred. So, even if the court believes that... But this is, like, all after the fact. I mean, you're looking at prejudice, and you're saying, well, we did consult, but how do you know that if the consultation had taken place before, that things would have been different? Because there's really only one thing that SBA could have done differently, or could have said that would have changed, that could have changed the outcome here, and that is the selection of the NAICS code. They agreed, though, with... And they didn't raise any issue with that when they were consulted, and the issue of what NAICS code was chosen cannot be adjudicated here. It's not for the court. Here's the problem. So, ARC notes that there is a solicitation out. They also note that they go to SBA. There's no consultation that has taken place, and there's no code at that point in time that applies to this particular solicitation. Then, after they contact CBP about this, not the SBA, sorry, the CBP about this, then the consultation takes place with the SBA, which seems to me should have taken place before. As a result of that meeting, they come out with the NAICS code, and then say at that point, you don't qualify under this NAICS code. That seems highly irregular. There's actually record support for the back and forth between the agency and GSA as to whether or not prior to the solicitation going out, this could be set aside because there weren't enough small business contractors that could have competed to justify a small business set aside. Is this A9092? Correct. A165? 165. These emails? 172. Correct. What's the takeaway from these emails? There was a decision by the agency prior to the solicitation going out that they could not set this aside, and even though it was only brought up to the SBA's attention after the solicitation was issued, ultimately that whole reasoning was shared with SBA and they agreed. Because there couldn't be two or more small businesses that could compete? Correct. At the time, that's correct. How did they know that without the consultation with the SBA? Because the agency has access to the database of vendors who are listed on the federal supply schedule for the services they've identified, and they have to register as being large or small. It's the same database that GSA uses. If there are no further questions, we respectfully request that this court uphold the trial court's opinion and dismiss the protest. Thank you. Counsel, you have a little over three minutes. Thank you, Your Honor. If I could, three points, Your Honors. The first, simply regarding the merits of the application of the regulation, I would note in addition to the premises of the questions that Your Honors asked, that the SBA's regulatory preambles also make clear that the market research requirements of subsection C2 apply to FSS orders that's discussed at length, and in other provisions where the SBA did want to limit a particular regulatory requirement solely to multiple award contracts, in other words the parent contracts. It said that specifically, for example, subsection E. There are about a half dozen other places where it did that, too. Go back to the prejudice. It seems to me that assume that I believe that there was error in the consultation issue, but I'm having a difficulty in seeing how you were prejudiced at the end of the day, how you were prejudiced. Well, so I think the point here is to give weight to SBA's views as to how it is that this ought to work. And let me unpack that a little bit. Assuming that that whole process was flawed, and here's the problem that I have, it just seems to me that you never did qualify or you didn't qualify for the solicitation. I want to be very clear about what could have happened here. If customs had reached out to SBA, SBA could have called up AHRQ and said, AHRQ, why aren't you registered for this NAICS code? You fit the size. And if they had done that, that would have been too, and that would undermine the entire rationale for ending the set-aside. We also did the same research for several of the other six companies that were listed under the old NAICS code. It took about two minutes. We found that one of those was also qualified on a size basis under the new NAICS code, in other words, without changing the NAICS code or anything like that. Again, the SBA could have made that inquiry. That is the kind of thing that the SBA does on an everyday basis. They call up small businesses. They assess capabilities. They see who can do what. They determine what size standards apply and how they apply to particular companies. That's how it works, and that's what the SBA envisioned itself as doing under this particular regulatory provision when it is consulted by an acquiring. What about your friend's argument that the consultation did take place before they sent out the solicitation? Well, first of all, my friend conceded that the required consultation, the C2 consultation regarding market research, did not occur. That's reflected in the decision of the court below. It's also reflected in my friend's brief, which concedes that that consultation did not take place. As for the consultation that took place later, I think the form speaks for itself. I would ask the court to look at the form, because the form there reflects that it assumed the factual basis of the agency's market research. If you take as a given that there was only one potential small business competitor, well, then of course there wasn't going to be a set-aside, and of course the SBA signed off on that. There couldn't possibly be another result. But that's why the SBA instituted a separate stage where the SBA would review agency's market research and supplement that research, because the SBA knows that agencies often don't take that task seriously, which is what happened here. And the SBA knows that that's the time, that's the opportunity that it has to intervene and to make sure that agencies do properly identify potential small business competitors so that when appropriate, they're able to set aside contracts. In closing, we would ask the court to reverse the decision of the court below. Thank you, Your Honor. Thank you. We thank all the parties for their arguments this morning. This court is now in recess.